The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner George T. Glenn, II, and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the holding of the Deputy Commissioner. However, pursuant to its authority under G.S. 97-85, the Full Commission has modified the prior decision in part and enter the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. That all parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between defendant-employer and plaintiff at all relevant times herein.
3. Zurich-American Insurance Group was the workers compensation carrier on risk at all relevant times herein.
4. Plaintiffs average weekly wage will be determined from a Form 22 to be provided by defendants covering at all relevant times herein.
5. The date of plaintiffs alleged injury or development of an occupational disease was 1 June 1996.
6. The issues to be determined are as follows:
a) Whether plaintiff sustained an injury by accident or developed an occupational disease on or about 1 June 1996, while in the course and scope of employment with defendant-employer?
b) If so, what, if any, workers compensation benefits is plaintiff entitled to receive as a result of the injuries sustained?
 ***********
The Pre-Trial Agreement along with its attachments and all other stipulations submitted by the parties are hereby incorporated by reference as though they were fully set out herein.
 ***********
Based upon the entire evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was a fifty-six year old woman on the date of the hearing before the Deputy Commissioner. She has completed high school, is a certified nurses assistant and has completed several business college courses.
2. Defendant-employer hired plaintiff as a machine operator. Defendant-employer produced electrical outlets. Plaintiffs duties included placing unfinished outlets into a mold and allowing the machine to place a tap (screw) in the outlet. Plaintiff would then have to ensure the tap was placed in the correct place on the outlet by measuring its location in reference to the edges of the outlet. Additionally, she tapped screws into previously drilled holes, fed small parts into the machines, lifted pans of parts, and removed jammed parts from the machines she operated. The pans of parts weighed as much as 100 pounds each. The position required her to be constantly moving her hands.
3. In her position, plaintiff handled approximately 6.9 parts per second or 416 parts per minute, 2,760 parts per hour and 22,080 parts per normal shift.
4. Plaintiff began to experience pain in her hands and arms. She told her supervisor of the problems she was experiencing and was sent to see the plant nurse. Plaintiff was then sent to see Dr. Ted Phillips. When plaintiff did not respond to the treatment administered by Dr. Phillips, he referred her to Dr. Steven K. Gudeman, Chief of Division of Neurosurgery at the University of North Carolina.
5. Dr. Gudeman diagnosed plaintiffs condition as bilateral carpal tunnel syndrome with the left being worse. Drs. Glen D. Subin and Timothy A. Collins concurred with this diagnosis.
6. Plaintiffs medical care was taken over by Dr. Emile Vandermeer. Though Dr. Vandermeer initially agreed with the above diagnosis, he later concluded that plaintiff was suffering from chronic bilateral and recurring wrist tenosynovitis and forearm strain. Dr. Vandermeer indicated that plaintiff had an atypical case of wrist tenosynovitis, it was of remarkable severity. Dr. Vandermeer is of the opinion that plaintiffs job with defendant-employer placed her at a greater risk of developing the disease due to the repetitive work she performed along with the repetitive forceful grasping and gripping.
7. Dr. Gudeman was of the opinion that plaintiff could perform some very restricted work which did not require any forceful grasping, gripping, or pushing or pulling.
8. Dr. Gudeman felt plaintiff would require prescriptions and/or medication to control her pain in the future. Additionally, he felt she would also require some psychological therapy to help her cope with her pain.
9. Plaintiff was not able to perform her regular job with defendant-employer and she was placed on light duty on 7 June 1996. Defendant-employer provided her with a job as a sorter and it was within her limitations, but at a lower rate of pay. Plaintiff was removed from this position by her treating physicians on or about 8 May 1997. Plaintiff has not worked for any employer since 9 May 1997. Plaintiff has attempted to find work within her restrictions but has not been able to find any work she is able to perform.
10. Prior to the onset of this condition, plaintiff suffered from other ailments such as high blood pressure, insulin dependent diabetes, lung infiltrates, stomach ulcer and thoracic tumor. These conditions did not prevent her from performing her job with defendant-employer.
11. Plaintiffs average weekly wages at the time of this incident were $270.34 per week, yielding a compensation rate of $180.24 per week.
12. Plaintiff has a 19% permanent partial disability rating to each of her arms, as given by Dr. Vandermeer. Dr. Vandermeer concluded that only one-half of this rating to each arm is related to plaintiffs occupational disease.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned makes the following:
 CONCLUSIONS OF LAW
1. Plaintiffs average weekly wage was $270.34 per week, yielding a compensation rate of $180.24 per week. G.S. 97-2(5).
2. Plaintiffs employment with defendant-employer exposed her to an increased risk of developing bilateral carpal tunnel syndrome as compared to members of the general public. G.S. 97-53(13). Plaintiffs employment with defendant-employer caused or significantly contributed to the aggravation of her bilateral carpal tunnel syndrome. Id.
3. As the result of her bilateral carpal tunnel syndrome, plaintiff is entitled to be paid by defendants temporary partial disability compensation at the rate of two-thirds the difference between her average weekly wage at the time of her injury of $270.34 and her average weekly wages while earning reduced wages for the period of 7 June 1996 through 8 May 1997. G.S. 97-30.
4. As the result of her bilateral carpal tunnel syndrome, plaintiff is entitled to be paid by defendants ongoing total disability compensation at the rate of $180.24 per week for the period of 9 May 1997 and continuing until she has returned to work or until further order of the Commission. G.S. 97-29.
5. As the result of her bilateral carpal tunnel syndrome, plaintiff is entitled to have defendants pay for all medical expenses incurred. G.S.97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms, with some modifications, the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary partial disability compensation at the rate of two-thirds the difference between her average weekly wage at the time of her injury of $270.34 and her average weekly wages while earning reduced wages for the period of 7 June 1996 through 8 May 1997. From the amounts having accrued, these benefits shall be paid in a lump sum. These benefits are subject to the attorneys fee approved herein.
2. Defendants shall pay to plaintiff ongoing total disability compensation at the rate of $180.24 per week for the period of 9 May 1997 and continuing until she has returned to work or until further order of the Commission. From the amounts having accrued, these benefits shall be paid in a lump sum. These benefits are subject to the attorneys fee approved herein.
3. Defendants shall pay for all medical expenses incurred by plaintiff as a result of her bilateral carpal tunnel syndrome.
4. A reasonable attorneys fee of twenty-five percent (25%) of the compensation awarded to plaintiff herein is hereby approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid to counsel for plaintiff with counsel for plaintiff receiving every fourth check thereafter.
5. Defendants shall pay the costs of this action.
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER